1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

| | |
|---|---|
| LEE HOTTELL, | NO.  C11-1834-RAJ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

14      Plaintiff Lee Hottell appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED.

20                    I.      FACTS AND PROCEDURAL HISTORY

21      At the time of plaintiff's most recent administrative hearing, plaintiff was a sixty-two

22   year old man with an eleventh grade education.  Administrative Record ("AR") at 594.  His

23   past work experience includes employment as a real estate sales agent, a security systems sales

24

REPORT AND RECOMMENDATION - 1

representative, and a household appliances salesperson.  AR at 375, 601-02.  Plaintiff was last

gainfully employed at Coldwell Banker Real Estate in January 2001.  AR at 602.

On September 26, 2001, plaintiff filed a claim for SSI payments.  AR at 376, 271-73.

On October 15, 2001, he filed an application for DIB, alleging an onset date of July 19, 2001.

AR at 83-85, 271, 366, 376.[1]  Plaintiff asserts that he is disabled due to gout, arthritis, allergies,

and asthma.  AR at 91.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 45-

48, 51-53, 275-78, 280-82.  Plaintiff requested a hearing, which took place on November 10,

2003.  AR at 305-45.  On February 12, 2004, the ALJ issued a decision finding plaintiff not

disabled and denied benefits based on his finding that plaintiff could perform his past relevant

work and therefore was not "disabled" under the Act.  AR at 15-25.  Specifically, the ALJ

found that plaintiff was limited to less than the full range of "light" work, because he would

require a "sit/stand" option.  AR at 23-24.  The ALJ did not call a vocational expert ("VE") to

testify as to how the jobs of fire protection/bid clerk and insurance salesman could be

performed with a "sit/stand" option, which was not contained in the Dictionary of

Occupational titles ("DOT") definition of these jobs.  AR at 24-25, 381-82.

On June 8, 2004, the Appeals Council denied plaintiff's request for review.  AR at 283-

85.  However, on July 7, 2004, the Appeals Council set aside its denial of review to consider

additional information.  AR at 286.  On September 20, 2004, the Appeals Council again denied

plaintiff's request for review of the ALJ's February 12, 2004 decision.  AR at 5-9.

---

[1] Although plaintiff alleged disability since July 19, 2001, he is ineligible for SSI
disability benefits for any month preceding (and including) September 2001, the month he filed
his SSI disability benefits application.  20 C.F.R. §§ 416.330, 416.335.  He is also ineligible for
DIB benefits for any month preceding October 2000, twelve months before his application.  20
C.F.R. §§ 404.621.

REPORT AND RECOMMENDATION - 2

Plaintiff then filed an action in this Court.  Based on the stipulation of the parties, on October 28, 2005, the Court issued an Order reversing and remanding the case for further administrative proceedings.  AR at 377-78.  Specifically, the Court's Order required that the ALJ on remand (1) explain the weight assigned to the opinions of plaintiff's primary care physician, Dr. Wendell Fleet; (2) further consider the plaintiff's subjective complaints and credibility; (3) further consider plaintiff's RFC; (4) redetermine whether the plaintiff could perform his past relevant work; and (5) as necessary, obtain supplemental testimony from a VE.  AR at 377-78.  Pursuant to the Court's Order, the Appeals Council remanded the case to an ALJ on June 7, 2006 for further administrative proceedings.  AR at 279-83.

On remand, the ALJ held a second administrative hearing on May 3, 2007.  AR at 624-55.  The ALJ issued a decision on August 23, 2007, making the same finding regarding plaintiff's RFC and therefore finding plaintiff not disabled because he can perform his past relevant work as a fire protection/bid clerk and insurance salesman.  AR at 514-29.

On February 10, 2009, the Appeals Council remanded the case to a new ALJ for further administrative proceedings.  AR at 530-33.  The Appeals Council's Order noted that the ALJ had failed to obtain supplemental testimony from the VE as to whether the jobs of fire protection/bid clerk and insurance salesman could be performed with a "sit/stand" option, and therefore "the sit/stand option issue was not resolved."  AR at 532.  Thus, the Appeals Council's Order required the new ALJ to (1) obtain clarification of the plaintiff's job requirements, as performed; and (2) obtain supplemental evidence from a VE regarding the effects of plaintiff's limitations on his occupational base, whether the plaintiff had skills that might be transferable to other occupations, and what jobs the plaintiff might be able to perform if he was unable to perform his past relevant work.  AR at 533.  The Order further provided

that before relying on the VE's testimony, the ALJ must identify and resolve any conflicts between that testimony and the information contained in the <u>DOT</u>.

On April 27, 2009, an ALJ conducted a third administrative hearing.  AR at 590-623. At the hearing, the ALJ obtained testimony from the VE as to plaintiff's past relevant work. Specifically, the VE testified that the plaintiff had past relevant work as a real estate sales agent, a sales representative for security systems, and a household appliances salesperson.  AR at 613-14.  The ALJ posed two hypotheticals to the VE, asking the VE to assume an individual of plaintiff's age, education, and work history, who was able to perform the full range of light work with no additional restrictions or qualifications.  AR at 615.  The VE testified that such a person would be capable of performing each of the three occupations identified above.  AR at 616.  Alternatively, the ALJ asked the VE to assume the same individual who was additionally restricted by the need for a "sit/stand" option.  AR at 616.  The VE testified that such an individual would be unable to perform any of the occupations identified above as the plaintiff's past relevant work.  AR at 616-19.  The ALJ did not ask the VE if there were any other jobs in the national economy that such an individual could perform.

The ALJ issued a decision on June 30, 2009, finding plaintiff not disabled because he could perform his past relevant work as a real estate sales agent, security systems sales representative, or household appliances salesperson.  AR at 363-76.  Specifically, the ALJ concluded that plaintiff was capable of performing the full range of light work, without the requirement of a "sit/stand" option and with no additional limitations.  AR at 371.  Because the ALJ found that plaintiff could return to his past relevant work, the ALJ did not make a step five finding regarding whether plaintiff could perform other work existing in significant numbers in the national economy.  AR at 375.

REPORT AND RECOMMENDATION - 4

On September 9, 2001, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  AR at 346-48, 348A.  On November 7, 2011, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v.*

1  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

2  (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

6  *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

7  erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

9       As the claimant, Mr. Hottell bears the burden of proving that he is disabled within the

10 meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

11 Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

12 any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

13 expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

14 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

15 of such severity that he is unable to do his previous work, and cannot, considering his age,

16 education, and work experience, engage in any other substantial gainful activity existing in the

17 national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

18 99 (9th Cir. 1999).

19      The Commissioner has established a five step sequential evaluation process for

20 determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

21 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

22 step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

23 any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

24 one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

V.      DECISION BELOW

On June 30, 2009, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social
        Security Act through December 31, 2001.

2.      The claimant has not engaged in substantial gainful activity since July
        19, 2001, the alleged onset date.

3.      The claimant has the following severe impairments: gout and allergies.

4.      The claimant does not have an impairment or combination of
        impairments that meets or medically equals one of the listed
        impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that the claimant
        has the residual functional capacity to perform the full range of light
        work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant
        can lift and/or carry 20 pounds occasionally and ten pounds
        frequently.  The claimant can stand and/or walk with normal breaks
        and can sit with normal breaks about six hours in an eight hour
        workday.

6.      The claimant is capable of performing past relevant work as a real
        estate sales agent, security systems sales representative, or household
        appliances salesperson.  This work does not require the performance
        of work-related activities precluded by the claimant's residual
        functional capacity.

7.      The claimant has not been under a disability, as defined in the Social
        Security Act, from July 19, 2001, through the date of this decision.

AR at 368-75.

VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in evaluating the medical opinions of examining physician
        Raymond West, M.D., and treating physician Wendell Fleet, M.D.?

2.      Did the ALJ err by rejecting plaintiff's back condition, arthritis, and
        hypertension as "severe" impairments at step two?

3.      Did the ALJ err by failing to consider plaintiff's non-exertional limitations in
        assessing his RFC?

4.      Did the ALJ err by failing to make a finding of disability based on the medical-vocational guidelines at step five?

Dkt. 23 at 1; Dkt. 24 at 2.

VII.    DISCUSSION

A.    The ALJ Erred in Evaluating the Medical Opinion Evidence

1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

1    uncontradicted opinions of examining physicians may not be rejected without clear and

2    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

3    physician only by providing specific and legitimate reasons that are supported by the record.

4    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

5         Opinions from non-examining medical sources are to be given less weight than treating

6    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

7    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

8    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

9    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

10   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

11   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

12   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

13   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

14              2.      *Raymond West, M.D.*

15        Examining physician Raymond West, M.D., M.P.H., performed a consultative

16   examination of plaintiff on November 16, 2006.  AR at 446-52.  Dr. West noted that plaintiff

17   ambulated with an antalgic gait, which indicated that he was "protecting both of his lower

18   extremities."  AR at 449.  Dr. West performed objective testing, and found that "[a]ll lower

19   extremity maneuvers demonstrate extremely poor balance.  He requires my help and on one

20   occasion would have fallen if I had not supported him.  Squatting is done once satisfactorily."

21   AR at 450.  A supine straight leg test elicited discomfort in the lumbar spine at 45 degrees

22   bilaterally, and although plaintiff was able to extend fully while sitting, this position also

23   elicited pain bilaterally.  AR at 450.

24

Based on his examination and review of plaintiff's medical records, Dr. West commented that plaintiff "limits himself to 15 minutes standing and two blocks walking. The reason for these self-imposed limitations is pain in the low back and the hips. Also, there is dyspnea on exertion. Objectively, I find little to account for these self-imposed limitations." AR at 451. He noted that "regrettably, we do not have imaging studies concerning the hip and the back. Barring these, I believe the claimant is able to stand and to walk for three hours cumulatively in an eight-hour day. Should imaging studies become available this opinion may require considerable qualification." AR at 451. In addition, Dr. West noted that he found "nothing neurologically to account for" plaintiff's imbalance. AR at 451. With respect to plaintiff's ability to sit, Dr. West noted that "the claimant limits himself to 30 minutes sitting . . . I believe he is able to sit for 4-5 hours cumulatively in an eight-hour day providing he is able to move about from time to time." AR at 451. Again, Dr. West noted that "regrettably, we cannot on this occasion appropriately assay the condition of the hips." AR at 451. Dr. West opined that plaintiff's self-imposed limitation of lifting and carrying "five pounds and for approximately 50 feet . . . appears to be too restrictive. I believe that he is able to lift and carry 20-25 pounds for 25-50 feet occasionally." AR at 452. Finally, Dr. West noted that plaintiff is able to bend and crouch occasionally, but kneeling, crawling, and climbing are not recommended. AR at 452. He considered plaintiff's blood pressure "excessive." AR at 452.

The following date, on November 17, 2006, Dr. West completed a Medical Source Statement for plaintiff to submit to the Social Security Administration. AR at 454-57. On that form, Dr. West indicated that plaintiff could lift and carry less than ten pounds frequently and twenty pounds occasionally, could stand or walk at least two hours but less than six hours in an eight-hour work day, and could sit for less than six hours in an eight-hour work day. AR at 454-55. Dr. West noted that plaintiff would have limited ability to push and pull with his

1   lower extremities, and should never climb, balance, kneel, or crawl, but could occasionally

2   crouch or stoop.   AR at 455.  He indicated that plaintiff should have only limited exposure to

3   dust, fumes, odors, chemicals and gases because of his bronchial asthma and allergic rhinitis.

4   AR at 457.  Due to gout and osteoarthritis, plaintiff should not work around hazards such as

5   machinery and heights, or in humid or wet conditions.  AR at 457.

6          The ALJ reviewed Dr. West's evaluation and medical source statement, and observed

7   that "following evaluation of the claimant on November 16, 2006, Dr. West indicated that

8   objectively he found little to account for the claimant's self-imposed limitations."  AR at 373.

9   The ALJ found that "Dr. West's opinions [in the medical source statement] are not entirely

10  consistent with the evidence of record as well as his own findings on examination.

11  Accordingly, they are given only some weight."  AR at 373.  However, the ALJ did not specify

12  *how* Dr. West's opinions were inconsistent with other medical evidence of record, or his own

13  findings during his examination of the plaintiff.

14         Plaintiff contends that the ALJ actually appears to have rejected Dr. West's opinion that

15  plaintiff was limited to "sedentary work," because the ALJ found plaintiff capable of the full

16  range of light work, including his past relevant work.  Dkt. 23 at 10 (citing AR at 371-75).

17  Plaintiff asserts that "it is impossible to discern how the [RFC] adopted by the ALJ credits Dr.

18  West's findings at all."  *Id*.  Moreover, plaintiff points out that "the ALJ failed to identify any

19  evidence of record that conflicted or was inconsistent with Dr. West's findings, and similarly

20  failed to offer any support for the conclusion that Dr. West's own objective testing was

21  inconsistent with the limitations the doctor assessed . . . the ALJ did not set forth an analysis of

22  the evidence, including Dr. West's report, which might support rejecting the doctor's findings,

23  nor did the ALJ make findings of his own."  *Id*. at 9 (citing AR at 373).  Finally, plaintiff

24  points out that "Dr. West's conclusions are largely consistent with those of the Plaintiff's

REPORT AND RECOMMENDATION - 12

treating physician, Dr. Wendell Fleet, whose opinion is discussed in detail below.  Both Dr.

West and Dr. Fleet, the only examining medical sources of record, found that the Plaintiff was

capable of less than the full range of sedentary work." *Id.* at 10.

The Commissioner responds that "a reasonable inference that may be drawn" is that the

ALJ "rejected Dr. West's opinion as inconsistent with the evidence of record that he discussed

earlier in his decision that included Plaintiff's March 12, 2007 x-rays and the June 25, 2007

evaluation note of treating physician Wendell Fleet, M.D." Dkt. 24 at 7 (citing AR at 372,

458, 459, 563).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004) (providing that the ALJ's findings are to be upheld by the court if supported by

inferences reasonably drawn from the record); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th

Cir. 1989) (reviewing court is "not deprived of [its] faculties for drawing specific and

legitimate inferences from the ALJ's opinion.").  The Commissioner points out that with

respect to plaintiff's x-rays, the ALJ stated that "March 12, 2007 pelvis/hip x-ray showed no

significant osseous or joint space abnormality.  March 12, 2007 x-ray of the lumbar spine

showed no compression fracture of significant bony abnormality; compression of T12 was

presumed to be old." Dkt. 24 at 7 (citing AR at 372).  Regarding Dr. Fleet's June 25, 2007

evaluation note, the ALJ stated that

> At a June 25, 2007 evaluation with Dr. Fleet, the claimant reported a recent bout of
> terrible low back pain, which had come on "shortly after a hearing with the disability
> folks that did not go in his favor."  Dr. Fleet noted that the claimant had had a non focal
> neuro exam, and a lumbar spine series and PA of the pelvis showed minimal disease.
> In May 2007 the claimant had developed some neck and shoulder pain, but cervical x-
> rays showed only moderate arthritis and neuro exam was again non focal.  On that date,
> the claimant reported he was feeling much better and was "back to his stable Vicodin
> pills."

AR at 372-73.  Based upon this evidence, the Commissioner argues that "the ALJ could

reasonably conclude that Dr. West's opinion was not entirely consistent with the evidence of

REPORT AND RECOMMENDATION - 13

1    record . . . the ALJ is responsible for resolving conflicts in medical testimony and determining

2    whether inconsistencies are material (or are in face inconsistencies at all) and whether certain

3    factors are relevant to discount a doctor's opinions falls within this responsibility." Dkt. 24 at

4    8.

5        In addition, the Commissioner asserts that an ALJ may reject a doctor's opinion of a

6    claimant's limited abilities when it is contradicted by that doctor's own clinical notes or other

7    recorded observations. *Id*. at 9. The Commissioner then points to several of the ALJ's

8    statements in the ALJ's summary of Dr. West's consultative evaluation. *Id*. at 8 (citing AR at

9    369-70). Finally, the Commissioner asserts that the ALJ did not "reject Dr. West's findings

10   wholesale," as argued by the plaintiff, but "rejected some aspects of Dr. West's opinions to the

11   extent that they were inconsistent with the ALJ's [RFC] finding." *Id*. at 9.

12       Although the Commissioner sets forth a reasonable interpretation of the evidence in this

13   case, the Commissioner's proposed reasons are improper post-hoc rationalizations this Court

14   cannot rely on to affirm the ALJ. The Ninth Circuit has consistently held that this Court

15   cannot affirm the decision of an agency on the ground that the agency did not invoke in

16   making its decision. *See Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001) (holding

17   that "if the Commissioner's contention invites this Court to affirm the denial of benefits on a

18   ground not invoked by the Commissioner in denying the benefits originally, then we must

19   decline.").

20       Here, the ALJ's assessment of Dr. West's opinions lacks the requisite specificity.

21   Although the ALJ stated that he was affording only "some weight" to Dr. West's opinions

22   because his opinions were inconsistent with (1) other evidence of record and (2) Dr. West's

23   own findings on examination, it is unclear what medical evidence or examination findings the

24   ALJ had in mind. Although the Court may draw reasonable inferences from the record before

REPORT AND RECOMMENDATION - 14

the Court, the Court declines the Commissioner's invitation to supply reasons that support the ALJ's conclusory assertions.  Moreover, plaintiff's contention that is it unclear what weight, if any, was afforded to Dr. West's opinions, in light of the ALJ's very different RFC assessment, is well-taken.

Accordingly, this case must be remanded for a new administrative hearing.  On remand, the ALJ shall reevaluate Dr. West's opinions.  If the ALJ does not assess an RFC that is consistent with Dr. West's opinions, the ALJ shall explain the weight afforded to Dr. West's opinion, and provide specific and legitimate reasons for failing to adopt it in full.  Most importantly, the ALJ shall describe – in detail - his reasons for declining to adopt Dr. West's opinions.

>    3.    *Wendell Fleet, M.D.*

Wendell Fleet, M.D., who has served as plaintiff's primary treating physician since 1999, provided nine separate evaluations and assessments from 2001 to 2009, and consistently found plaintiff capable of less than sedentary work.  AR at 585.  In eight evaluations completed between 2001 and 2009, Dr. Fleet opined that plaintiff was "severely limited," defined as "unable to lift at least 2 pounds or unable to stand and/or walk" for the purpose of determining eligibility for state-funded assistance by DSHS, due to plaintiff's gout, degenerative joint disease, hypertension, or a combination of these conditions.  AR at 130-32 (July 2001), 267-70 (August 2003), 479-82 (November 2003), 475-78 (March 2005), 471-74 (January 2006), 467-70 (April 2006), 569-72 (October 2007), 479-82 (September 2008).

In addition, Dr. Fleet completed a RFC assessment of plaintiff in April 2009, in which he concluded plaintiff was unable to perform "sedentary" work as defined by the regulations.  AR at 585-88.  Specifically, Dr. Fleet noted that plaintiff was "unable to stay in any position for very long" due to arthritis in plaintiff's hips and chronic low back pain.  AR at 585.  Dr.

1    Fleet opined that plaintiff could lift up to 10 pounds occasionally, stand and walk less than two

2    hours in an eight-hour day, sit for less than four hours, but must periodically alternate between

3    sitting and standing to relieve pain and discomfort.  AR at 585-86.  Due to degenerative

4    changes in his neck, plaintiff would be limited in his ability to push or pull with his upper and

5    lower extremities.  Dr. Fleet further indicated plaintiff should "never" climb, balance, stoop,

6    crouch, kneel, or crow due to his "regular falls."  AR at 587.  Finally, Dr. Fleet commented that

7    "his body is SHOT: initially with gout, lately with degenerative joint disease.  I don't see him

8    competing in any labor marketplace."  AR at 588.  In an April 26, 2009 supplemental letter,

9    Dr. Fleet further indicated that plaintiff "would also be precluded from remaining in any

10   position, including sitting for any significant period, due to pain and discomfort resulting from

11   his lower back pain and degenerative joint disease.  Due to these conditions, Mr. Hottell would

12   be unable to sit even for 4 hours and stand and/or walk for 2 hours in an eight-hour workday."

13   AR at 589.  Dr. Fleet opined that "my examinations and clinical observations of Mr. Hottell

14   over the ten years or so that I have treated him and objective testing, including radiology, are

15   consistent with his complaints."  AR at 589.

16          The ALJ devoted a full page of his written decision to summarizing Dr. Fleet's

17   findings, discussed above.  AR at 374.  In addition, earlier in the ALJ's decision, the ALJ noted

18   that "[t]reatment records from Harborview Medical Center show that on July 19, 2001 the

19   claimant presented to Wendell Patrick Fleet, M.D. for evaluation, complaining that his joints

20   had been hurting too much for him to work.  Dr. Fleet indicated that the claimant was a long

21   time patient of the Arthritis Clinic on the basis of chronic gout."  AR at 368.  However, "x-rays

22   showed early osteoarthritis of the hips; x-rays of the bilateral hands were normal.  Physical

23   examination of the extremities showed no joint effusion but mild degenerative changes

24   consistent with either gout or degenerative joint disease."  AR at 368.

REPORT AND RECOMMENDATION - 16

1    After reviewing Dr. Fleet's findings, the ALJ asserted that "[a]s noted above, there is

2    little objective evidence supporting Dr. Fleet's opinions.  X-rays showed only mild to moderate

3    degenerative disease or arthritis, there was no evidence of inflammation or exquisite tenderness

4    of the joints upon examinations, and neurological evaluations were consistently normal."  AR

5    at 374.  The ALJ asserted that "in light of the lack of objective findings, it would appear that

6    Dr. Fleet relied quite heavily on the subjective report of symptoms and limitations provided by

7    the claimant, and seemed to unequivocally accept as true most, if not all, of what the claimant

8    reported.  Yet, as explained above and elsewhere in this decision, objective medical findings

9    do not support the extent of limitations alleged by the claimant."  AR at 374.  As a result, the

10   ALJ gave "very little weight to the opinions of Dr. Fleet."  AR at 374.

11   Plaintiff contends that "the ALJ points to no evidence that would support" the ALJ's

12   finding that Dr. Fleet relied "quite heavily" on plaintiff's self-report, and an ALJ cannot use his

13   conclusion regarding a claimant's credibility "as a proxy in rejecting the opinions of the

14   claimant's treating physicians.  Nor can the ALJ avoid the requirements of 20 C.F.R. §

15   404.1527 by presuming, without support, that a treating provider's opinion is based solely or

16   primarily on a claimant's self-report."  Dkt. 23 at 13.  Plaintiff points out that Dr. Fleet asserted

17   in this April 26, 2009 letter that he had "no reason to believe that [plaintiff's] complaints are

18   less than credible."  *Id*. (citing AR at 589).

19   In addition, the plaintiff argues that the ALJ provided no basis for rejecting Dr. Fleet's

20   finding that "objective testing, including radiology, are consistent with [plaintiff's]

21   complaints."  *Id*. at 14 (citing AR at 589).  Plaintiff asserts that "an ALJ may not reject the

22   opinion of a treating physician by concluding, without more, that there is a lack of objective

23   medical findings in the record to support that diagnoses."  *Id*. (citing *Embrey*, 849 F.2d at 421).

24   Plaintiff asserts that "the record is replete with reference to objective findings and

REPORT AND RECOMMENDATION - 17

1    observations, including imaging studies, which could reasonably be expected to produce the

2    Plaintiff's symptoms," and this evidence includes treatment providers' references to "tophi and

3    tenderness in joints affected by gout, reduced range of motion, low and mid back tenderness

4    and pain, bruising from falls, excessive blood pressure and related symptoms." *Id.* (citing AR

5    at 133, 138, 140, 145, 184, 423, 435, 437, 495).   Moreover, plaintiff asserts that the imaging

6    studies "objectively document the medical impairments of which the Plaintiff complains." *Id.*

7    at 15.

8          The Commissioner responds that "plaintiff's disagreement with the ALJ's reasons for

9    his rejection of Dr. Fleet's opinions based on Plaintiff's own interpretation and weighing of the

10   evidence does not establish that the ALJ erred in considering Dr. Fleet's opinions."  Dkt. 24 at

11   14.  In addition, the Commissioner asserts that the ALJ provided two reasons for finding that

12   Dr. Fleet relied heavily on plaintiff's subjective reports of symptoms and limitations: (1) the

13   ALJ's statement that there was little objective evidence to support Dr. Fleet's opinion, and (2)

14   the ALJ's observation that "objective medical findings do not support the extent of limitations

15   alleged by the claimant." *Id.* at 13.

16         Here, in contrast with his discussion of Dr. West's opinion, the ALJ provided *some*

17   explanation regarding his reasons for affording Dr. Fleet's opinions "very little weight."  As

18   noted above, the ALJ indicated that he rejected Dr. Fleet's opinions because (1) "little

19   objective evidence supported Dr. Fleet's opinions" and (2) "it would appear that Dr. Fleet

20   relied quite heavily on the subjective report of symptoms and limitations provided by the

21   claimant."  AR at 374.  For the reasons discussed below, however, the ALJ's explanation is

22   inadequate.

23         With respect to the ALJ's finding that "little objective evidence supports Dr. Fleet's

24   opinions" because "x-rays showed only mild to moderate degenerative disease or arthritis,

REPORT AND RECOMMENDATION - 18

1    there was no evidence of inflammation or exquisite tenderness of the joints upon examination,

2    and neurological evaluations were consistently normal," the Court finds that the ALJ failed to

3    adequately explain how this objective medical evidence is actually inconsistent with Dr.

4    Fleet's opinions.  As the Ninth Circuit held in *Embrey*, an ALJ's assertion that "medical

5    opinions are not supported by sufficient objective findings or are contrary to the preponderant

6    conclusions mandated by the objective findings does not achieve the level of specificity our

7    prior cases have required, even when the objective factors are listed seriatim.  The ALJ must

8    do more than offer his conclusions.  He must set forth his own interpretations and explain why

9    they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421.

10         In addition, in his discussion of Dr. Fleet's treatment notes, the ALJ fails to discuss any

11   of the objective evidence in the record that tends to support Dr. Fleet's opinions.  As plaintiff

12   points out, this evidence includes tophi, joint tenderness, documented pain in the lower and

13   mid-back, reduced range of motion in plaintiff's joints, bruising from frequent falls, and high

14   blood pressure.  AR at 133, 138, 140, 145, 184, 423, 435, 437, 495.  Under the regulations, the

15   ALJ's approach is inadequate.

16         Finally, the ALJ did not point to any evidence, such as any statement made by Dr. Fleet

17   in his treatment notes, to support his argument that Dr. Fleet improperly relied on plaintiff's

18   subject report of symptoms and limitations.   As the Commissioner apparently concedes, even

19   this argument by the ALJ appears to be entirely premised upon the ALJ's conclusion that

20   objective medical evidence does not support Dr. Fleet's opinions.  While the Court is not in a

21   position to assess whether or not objective medical evidence does, in fact, support Dr. Fleet's

22   opinions, the Court finds that the ALJ has failed to adequately explain his conclusion that it

23   does not.

24

On remand, the ALJ is directed to reevaluate Dr. Fleet's opinion.  If the ALJ finds that Dr. Fleet's opinions are inconsistent with the objective medical evidence of record, the ALJ must provide a detailed explanation for this finding that is supported by citations to the record.  Similarly, if the ALJ finds that Dr. Fleet appears to have relied on plaintiff's subjective complaints, the ALJ should provide specific examples and citations the record to support this assertion.

B.   The ALJ Is Directed To Reevaluate Plaintiff's Hypertension, Back Condition, and Arthritis at Step Two

Plaintiff contends that "[a]lthough the ALJ discussed the Plaintiff's degenerative disc disease and osteoarthritis, and reviewed evidence that clearly supports a finding that these conditions exceed the low threshold for severity established under the regulations, the ALJ failed to make a finding as to the severity of these conditions.  More importantly, the ALJ's . . . assessment of the opinion evidence and formulation of the Plaintiff's [RFC] makes no mention of these conditions or the vocational limitations stemming therefrom[.]"  Dkt. 23 at 16 (citing AR at 369-70).  Plaintiff asserts that this omission by the ALJ at step two of the sequential evaluation process "fundamentally undermines the ALJ's analysis."  *Id.*

Similarly, plaintiff contends that the ALJ erred by explicitly rejecting plaintiff's hypertension as a "severe" impairment.  With respect to plaintiff's hypertension, the ALJ noted in his written decision that

> . . . at an April 10, 2003 evaluation, Dr. Fleet indicated that although the claimant's blood pressure was elevated on that date, the claimant was "not unusually hypertensive" but was stressed about his brother's surgery.  At March 3, 2005, April 30, 2007, and September 25, 20008 evaluations with Dr. Fleet, the claimant's blood pressure was normal at 130/80.  There is no objective medical evidence showing that the claimant's hypertension is more than transient or that it causes significant vocational limitations.  Accordingly, I find that this alleged impairment is non-severe.

REPORT AND RECOMMENDATION - 20

1   AR at 370.   Plaintiff asserts that "while the transient nature of an individual's symptoms may

2   be a factor for consideration in determining the effect of a medical abnormality on the

3   individual's work capacity, it is not, on its, own, a sufficient reason to reject the underlying

4   impairment as 'severe' . . . many symptoms that can and do interfere with the ability to work,

5   such as pain and fatigue, are transient." Dkt. 23 at 17.  Finally, plaintiff points to his high

6   blood pressure readings, which ranged from 166/109 in January 2001 to 190/100 in April 2006,

7   and asserts that the medical evidence as a whole establishes that plaintiff's high blood pressure

8   met the low standard for severity posited under the regulations. *Id.* (citing AR at 138, 145,

9   156, 267-68, 435, 468, 472, 476).

10          The Commissioner concedes that the ALJ erred by failing to expressly consider the

11   severity of plaintiff's back condition and arthritis at step two, but argues this error "was

12   harmless and had no effect on the ALJ's ultimate decision." Dkt. 24 at 17.  With respect to the

13   ALJ's discussion of plaintiff's hypertension at step two, the Commissioner argues that the ALJ

14   included a sufficiently detailed discussion of this impairment at step two, but plaintiff is simply

15   offering his own interpretation of the evidence.  *Id.*

16          At step two, a claimant must make a threshold showing that his medically determinable

17   impairments significantly limit his ability to perform basic work activities.  *See Bowen v.*

18   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

19   activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

20   404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

21   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

22   effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting Social Security

23   Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of

24   groundless claims."  *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

REPORT AND RECOMMENDATION - 21

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1508, 416.908.

In light of the Commissioner's concession that the ALJ erred at step two by failing to expressly consider the severity of plaintiff's degenerative disc disease and osteoarthritis, and because this case is already being remanded for further consideration of the medical evidence, following remand the ALJ is also directed to expressly evaluate the severity of these two impairments at step two.  In this case, it is unnecessary for the Court to determine whether the ALJ's discussion of plaintiff's hypertension constituted reversible error.  However, on remand, the ALJ is directed to engage in a more detailed discussion of plaintiff's hypertension, including an evaluation of plaintiff's medical records which reflected blood pressure readings that plaintiff's physicians characterized as "severe."  The ALJ is also directed to explain why plaintiff's hypertension would, or would not, impact plaintiff's ability to engage in work activities.

C.      On Remand, the ALJ is Directed to Address Plaintiff's Alleged Non-Exertional Limitations

Plaintiff contends that the ALJ erred by failing to consider his non-exertional limitations, such as limitations related to pain and fatigue, concentration, persistence and pace, or a claimant's ability to interact with others on a consistent basis.  Dkt. 23 at 18.  Plaintiff points to his testimony during the hearing that it was difficult to focus on "much of anything," and that he had trouble sleeping.  *Id*. (citing AR at 611).  Plaintiff also points to opinions by

REPORT AND RECOMMENDATION - 22

1   Dr. West and Dr. Fleet, which both reflected an assessment of several non-exertional

2   restrictions. *Id.* at 18-19.

3          The Commissioner responds that the ALJ did not err, "because the ALJ properly

4   rejected Plaintiff's subjective complaints and Dr. West's and Dr. Fleet's opinions, and in doing

5   so, the ALJ necessarily considered whether Plaintiff had nonexertional limitations and properly

6   found that he did not in the [RFC] finding." Dkt. 24 at 19 (internal citations omitted).  Thus,

7   plaintiff asserts that the ALJ's RFC assessment was based on substantial evidence.  *Id.* at 20.

8          In light of the fact that this case is being remanded for reconsideration of Dr. West's

9   and Dr. Fleet's opinions, the ALJ is also directed to discuss, in his written decision, whether

10  these medical opinions support a finding of non-exertional limitations.  After reevaluating the

11  evidence, discussed above, the ALJ is directed to reapply the sequential evaluation process.

12         D.      On Remand, the ALJ is Directed to Proceed to Step Five of the Sequential
                   Evaluation Process Even if Plaintiff Can Perform his Past Relevant Work

13         As this case is being remanded for a reevaluation of the medical evidence, it is

14  unnecessary for the Court to resolve plaintiff's remaining assignments of error.  Specifically,

15  plaintiff contends that substantial evidence does not support the ALJ's step four finding, and

16  that the Court should find him disabled as a matter of law at step five based on Dr. West's and

17  Dr. Fleet's opinions and rules 201.04 or 201.06 of the Medical-Vocational Guidelines.   Dkt.

18  23 at 2, 10-11, 15, 24; Dkt. 24 at 21-23.  The Commissioner responds that "issues not decided

19  by the ALJ should not be decided by the Court for the first time on appellate review," and "a

20  finding of disability based on rule 201.04 and rule 201.06 as urged by Plaintiff is not

21  warranted" because these particular rules are inapplicable.  Dkt. 24 at 22.  Furthermore, the

22  Commissioner asserts that the VE "did not indicate whether or not Plaintiff had transferable

23

24

REPORT AND RECOMMENDATION - 23

1   skills as a result of his past work, and the ALJ did not make a finding on this issue in his

2   decision." *Id.*

3          As discussed above in the Court's summary of this case's procedural history, the

4   February 10, 2009 Remand Order by the Appeals Council specifically directed the ALJ to

5   "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed

6   limitations on the claimant's occupational base (Social Security Ruling 83-14) and *to*

7   *determine whether the claimant has acquired any skills that are transferable to other*

8   *occupations under the guidelines in Social Security Ruing 82-41* . . . The [ALJ] will ask the

9   vocational expert to identify examples of appropriate jobs and, if unable to perform his past

10  relevant work, to state the incidence of such jobs in the national economy."  AR at 533

11  (emphasis added).  The ALJ, however, concluded his analysis at step four, and failed to elicit

12  any testimony from the VE regarding the transferability of plaintiff's skills to other jobs in the

13  national economy.

14         This action was commenced over a decade ago, and the Commissioner has already

15  conducted three administrative hearings to consider plaintiff's claims.  The Court is loathe to

16  remand this case for yet another administrative hearing, but considers it necessary under the

17  circumstances.  The parties are advised, however, that this is the last time the undersigned will

18  remand this case for further proceedings to resolve the ALJ's errors.

19         On remand, regardless of the ALJ's findings at step four, the ALJ is directed to elicit

20  testimony from a VE regarding plaintiff's ability to perform other occupations (in addition to

21  his past relevant work) and the incidence of such jobs in the national economy.  In particular,

22  the ALJ shall elicit testimony from the VE regarding whether there are jobs in the national

23  economy that plaintiff can perform if he does, in fact, require a sit/stand option.  Finally, the

24  ALJ shall include his step five findings, based on the VE's testimony, in his written decision.

REPORT AND RECOMMENDATION - 24

1

VIII.   CONCLUSION

2

For the foregoing reasons, the Court recommends that this case be REVERSED and

3

REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4

instructions.  A proposed order accompanies this Report and Recommendation.

5

DATED this 21st day of December, 2013.

6

7

*James P. Donohue*

JAMES P. DONOHUE

8

United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 25